UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-80608-CIV-MARRA

ARLENE GRIMM, as personal representative
of the Estate of Adam Donohue, deceased,

      Plaintiff,

vs.

THE CITY OF BOCA RATON, a Florida
municipal corporation,

      Defendant.

_____/

**OPINION AND ORDER**

      This cause is before the Court upon Defendant City of Boca Raton's Motion to Dismiss

(DE 6).  The Motion is fully briefed and ripe for review.  The Court has carefully considered the

Motion and is otherwise fully advised in the premises.

I. Background

      Plaintiff, Arlene Grimm, as personal representative of the Estate of Adam Donohue,

("Plaintiff") brings this nine-count Complaint against Defendant The City of Boca Raton

("Defendant") for federal constitutional violations pursuant to  42 U.S.C. § 1983 as well as state

law claims.  Plaintiff asserts claims for unreasonable seizure (count one); excessive force (count

two); failure to train (count three); failure to supervise (count four); a "Monell" claim (count

five); denial of medical care (count six) and state law claims for negligence/wrongful death

(count seven), assault and battery (count eight) and negligent hiring, retention and supervision

(count nine).  (Compl., DE 1-1.)  The Complaint alleges the following:

      On March 8, 2013, Adam Donohue ("decedent"), in the "throes of a psychotic episode,"

was running through the streets of Boca Raton, Florida.  (Compl. ¶ ¶ 16-17.)  Decedent

encountered a woman, put his hands on her and stated he wanted to "pass away."  (Compl. ¶ 17.)

He then approached a van, and attempted to pull the driver out of the vehicle.  That driver drove

to a gas station where he called 911. (Compl. ¶ 18.)   Shortly afterwards, a taxi cab driver saw

decedent running erratically in the road.  That driver stopped to avoid striking decedent, at which

time decedent jumped on the car's hood and roof.  When the driver got out of the taxi cab,

decedent struck the driver and took the taxi cab. (Compl. ¶ 19.)

At about 8:44 p.m., police officers, who were dispatched to deal with the van and taxi cab

incident, heard Officer Brian Pare state, "Tango 62, shots fired! 4000 North Military. Get Down .

. ." (Compl. ¶ 20.)  Less than a minute later, Officer Pare radioed, "Tango 62 . . . I've got one

down. Start me fire. I'm 10-4. Keep another couple units coming code."  (Compl. ¶ 21.)  When

other officers asked if the incident was related to the theft of the taxi cab, Pare responded, "I'm

not sure what you guys are working.  This was a cab that fled from me and then I caught up with

it." (Compl. ¶ 22.)  A few seconds later, Officer Pare radioed, "White Male Running

Northbound.  A few seconds later, the dispatcher called Pare, "Tango 62, Status?" to which Pare

responded, "In custody." (Compl. ¶ 23.)

Tess Sangress, a witness to this incident, saw decedent run to a red car and begin

pounding on the windows with his fists.  According to Ms. Sangress, it was then that Officer Pare

confronted decedent, with his gun drawn, and shot him twice, "after which decedent was running

away."  Decedent was within three or four feet of Officer Pare when the shooting began.

(Compl. ¶ 24.)  Other witnesses report that decedent approached Officer Pare in an aggressive

fashion and may have had contact with the Officer, and they then heard multiple shots fired.

(Compl. ¶ 25.)

Officer Christopher Bradley arrived at the scene and saw Officer Pare shoot decedent. Officer Bradley stated that he then "tased" decedent in the back, who fell down, and tried to get up again. (Compl. ¶ 26.)  Officer Bradley jolted decedent again, but decedent remained "unfazed." (Compl. ¶ 27.)   Decedent was hand-cuffed before he died. (Compl. ¶ 1.)  The police report indicated that both officers used a taser on decedent and four spent shell casings were found at the scene, as well as another live round. (Compl. ¶ 29.)

Both Officers Pare and Bradley, as City of Boca Raton police officers, had inadequate training for dealing with an individual with a psychotic break and were improperly trained and/or supervised in the use of deadly force and requesting emergency medical treatment. (Compl. ¶ 33.)  Prior to this incident, Defendant should have known that its officers were in need of training. (Compl. ¶ ¶ 34-36.)  This deficiencies in training, supervising and disciplining of Officers Pare and Bradley were the cause of decedent's constitutional injuries and deprivations. (Compl. ¶ ¶ 39.)

Defendant moves to dismiss the Complaint on the ground that it fails to state a claim under section 1983 and state law.  Specifically, with respect to the federal claims, Defendant contends the Complaint does not contain facts that rise to a constitutional violation for excessive force and fails to plead that Defendant had a custom or policy that violated decedent's constitutional rights.  As for the state law claims, Defendant argues that the wrongful death and assault and battery claims are barred under Florida Statutes 776.085 and the negligent hiring, retention and supervision claims are insufficiently pled.

3

II.  Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

III. Discussion

A.      Municipal Liability

"The Supreme Court has placed strict limitations on municipal liability under § 1983." Grech v. Clayton Cnty., 335 F.3d 1326, 1329 (11th Cir. 2003) (citing City of Canton v. Harris,

489 U.S. 378, 385 (1989) and Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).  A

city's liability under Section 1983 "may not be based on the doctrine of respondeat superior."  Id.

A local government is "liable under Section 1983 only for acts for which the local government is

actually responsible."  Marsh v. Butler Cnty., 268 F.3d 1014, 1027 (11th Cir. 2001), abrogated

on other grounds, Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "Indeed, a [city] is liable

only when the [city's] 'official policy' causes a constitutional violation." Grech, 335 F.3d at

1329. Thus, Plaintiff must "'identify a municipal 'policy' or 'custom' that causes his injury.'" Id.

(quoting Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998)).

A § 1983 plaintiff "has two methods by which to establish a [city's] policy: identify either

(1) an officially promulgated [city] policy or (2) an unofficial custom or practice of the [city]

shown through the repeated acts of a final policymaker for the [city]." Id. "Because a [city] rarely

will have an officially-adopted policy of permitting a particular constitutional violation, most

plaintiffs . . . must show that the [city] has a custom or practice of permitting it and that the

[city]'s custom or practice is 'the moving force [behind] the constitutional violation.'" Id. at 1330

(quoting City of Canton, 489 U.S. at 389).

To establish "§ 1983 liability against a municipality based on custom, a plaintiff must

establish a widespread practice that, 'although not authorized by written law or express

municipal policy, is so permanent and well settled as to constitute a custom or usage with the

force of law.'" Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991) (quoting

City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)); see also Wayne v. Jarvis, 197 F.3d

1098, 1105 (11th Cir. 1999), overruled on other grounds, Manders v. Lee, 338 F.3d 1304 (11th

Cir. 2003) ("To establish a policy or custom, it is generally necessary to show a persistent and

widespread practice.").

      B.      <u>Does the Complaint Allege A Constitutional Violation?</u>

An individual's right secured by the Fourth Amendment to be free from unreasonable seizures includes the right to be free from the use of excessive force during a criminal apprehension. <u>Graham v. Connor</u>, 490 U.S. 386, 394-95 (1989).  "*[A]ll* claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." <u>Id.</u> at 395.

The standard of reasonableness in an excessive force inquiry is wholly objective, and the use of force is constitutional if the arresting officer's actions were objectively reasonable in light of the facts and circumstances confronting the officer.  The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than by hindsight.  <u>Id.</u> at 396.

Under <u>Graham</u>, courts should determine the "objective reasonableness" of a seizure by balancing the "nature and quality of the intrusion" against the "governmental interests at stake." <u>Graham</u>, 490 U.S. at 396.  The Court must consider factors that include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Id.</u>  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." <u>Id.</u> at 396-97.

The Eleventh Circuit has observed, in cases involving fleeing suspects,

> that a police officer may constitutionally use deadly force when the officer (1) "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others" or "that he has committed a crime involving the infliction or threatened infliction of serious physical harm"; (2) reasonably believes that the use of deadly force was necessary to prevent escape; <u>and</u> (3) has given some warning about the possible use of deadly force, if feasible. . . . Although these factors are useful, we cannot apply them mechanically, . . . and "we must still slosh our way through the factbound morass of 'reasonableness'". . . .

<u>Morton v. Kirkwood</u>, 707 F.3d 1276, 1281 (11th Cir. 2013)(citations omitted).  The Eleventh

Circuit has noted, however, that

> The Supreme Court has emphasized that there is no precise test or "magical on/off switch" to determine when an officer is justified in using excessive or deadly force. . . .Nor must every situation satisfy certain preconditions before deadly force can be used. . . . Rather, the particular facts of each case must be analyzed to determine whether the force used was justified under the totality of the circumstances.

<u>Garczynski v. Bradshaw</u>, 573 F.3d 1158, 1166 (11th Cir. 2009) (citations omitted).

Accepting the facts as true in the Complaint, the Court concludes that the force used by Officer Pare was objectively reasonable under the Fourth Amendment.  Here, the Complaint alleges that decedent engaged in psychotic behavior, tried to take a car from one individual, succeeded in taking a car after striking the driver, and approached Officer Pare in "an aggressive fashion" and "possibly even" made physical contact with Officer Pare when confronted. Significantly, there are no allegations that the police were on notice that decedent suffered from a mental illness.  Nor are there any allegations suggesting decedent could have been restrained. Indeed, even after Officer Pare shot decedent, decedent continued to run away.  Likewise, after Officer Bradley used a taser on him, decedent tried again to get up.  "[U]nder the law, the threat

of danger to be assessed is not just the threat to officers at the moment, but also to the officers and other persons if the chase went on." Pace v. Capobianco, 283 F.3d 1275, 1280 n.12 (11th Cir. 2002).  Here, decedent resisted arrest and posed substantial danger to the Officers and the public as evidenced by his consistent use of aggression on the night in question in his encounters with the public and the police.

In challenging the motion to dismiss, Plaintiff contends that reliance on cases involving "fleeing felons" are inappropriate since the instant action involved an individual suffering from a psychotic break.  However, there are no allegations in the Complaint to support notice to the police of decedent's mental condition.  Although the Complaint describes decedent as "psychotic," the description of decedent's behavior (i.e., assaulting individuals, attempts to take and taking cars, running away from the police, etc.) does not differ in appearance in any way from the actions of a fleeing felon.  For the purpose of a complete record, however, the Court will briefly discuss Plaintiff's objection to Defendant's reliance on Long v. Sloan, 508 F.3d 576 (11th Cir. 2007), a case which the Court finds controlling.

In Long, the Eleventh Circuit reversed the district court's denial of a motion to dismiss an excessive force case against a police officer.  Id. at 578.   There, the father of the decedent notified police that his son was psychotic and needed to be detained.  Id.  When the police officer approached the decedent and told him he would be taking him to jail, the decedent ran over to the police cruiser, got inside and closed the door.  Id at 579.  The police officer ordered the decedent out and pointed his pistol at the decedent, who then began driving off in the police cruiser.  Id. The police officer then shot and killed the decedent.  Id.

Thus, in Long, like here, the decedent had taken a car and was resisting arrest.  While in

Long, the police officer had notice that the decedent was mentally unstable, there are no allegations of such notice here. Despite the fact that the Long decedent was known to be mentally ill, that fact did not convince the Court to find the force to be excessive.[1] See Montoute v. Carr, 114 F.3d 181, 185 (11th Cir. 1997) ("[A]n officer is not required to wait until an armed and dangerous felon has drawn a bead on the officer or others before using deadly force.")

Lastly, Plaintiff challenges Defendant's argument that no constitutional violation is alleged by claiming that Plaintiff must be afforded discovery prior to dismissal. The Court disagrees. See Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1367 (11th Cir.1997) ("Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should ... be resolved before discovery begins."); see also Kaylor v. Fields, 661 F.2d 1177, 1184 (8th Cir.1981) ("Discovery should follow the filing of a well-pleaded complaint. It is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim.").

For the foregoing reasons, the Court finds that no constitutional violation for excessive force is alleged,[2] but will allow Plaintiff to amend, assuming amendment can be done in compliance with Rule 11 of the Federal Rules of Civil Procedure.

---

[1] If anything, knowledge of mental instability might reasonably cause the police to view an individual as more dangerous. See Andrade v. Miami-Dade Cnty., No. 09–23220–CIV, 2011 WL 4345665, at * (S.D. Fla. Sept. 16, 2011) (finding that the plaintiff's "admitted resistance to [the police's] attempt to apprehend him, *his incoherence and volatility*, the ensuing struggle and the threat caused by [the] [p]laintiff's condition and behavior," made it reasonable for the police officer to view the plaintiff as dangerous.) (emphasis added). Andrade is another case relied upon by Defendant and improperly viewed by Plaintiff as inapposite.

[2] Given decedent's actions, there is no basis to find that the police engaged in an unreasonable seizure by using force against him. Nor do the facts allege an earlier time by which the Officers should have gotten decedent medical care.

9

C.  Does the Complaint Allege a Custom or Policy?

The vast majority of the allegations in the section 1983 claims suffer from the same pleading deficiency; namely, these allegations improperly focus on the alleged actions of the individual police officers, and not on the custom or policy of Defendant.  For example, count one is labeled "unreasonable seizure" and states that the police officers seized decedent when they fired and hit decedent with their tasers. (Compl. ¶ 50.)  Likewise, count two is labeled "excessive force" and states that Officer Pare used excessive force against decedent and engaged in deliberately indifferent conduct. (Compl. ¶¶ 61-63.)  These facts show nothing other than an isolated incident between decedent and individual police officers.  There are no allegations demonstrating a City custom or policy.  See Sanchez v. Miami-Dade County, No. 06-21717-CIV, 2007 WL 1746190, at * 3 (S.D. Fla. Mar. 28, 2007) (dismissing complaint where the "plaintiff has alleged that one incident occurred between himself and two police officers, and he has alleged nothing to show it was not an isolated incident").  Therefore, these counts do not properly allege a basis to impose liability on a municipal defendant under Monell.

With respect to the failure to train (count three) and failure to supervise (count four) claims, the Court notes that a failure to train and supervise adequately municipal employees can constitute an actionable policy for section 1983 purposes where the failure "reflects a 'deliberate indifference to the rights of persons with whom the police come into contact.'" Bruce v. Beary, 498 F.3d 1232, 1248-49 (11th Cir. 2007) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989) (footnote omitted) and citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir.1986)); Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, 402 F.3d 1092, 1116 (11th Cir. 2005).

"To establish deliberate indifference, a plaintiff must present some evidence that the

10

municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). Without this notice, a municipality is not liable as a matter of law for a failure to train. Id.; see also Church v. City of Huntsville, 30 F.3d 1332 (11th Cir. 1994) (reversing entry of preliminary injunction against the city holding the plaintiffs were not likely to succeed on the merits of their failure to train claim without proof that the city was aware of a prior incident in which constitutional rights were similarly violated); Wright v. Sheppard, 919 F.2d 665 (11th Cir. 1990) (the sheriff's department was not liable for a deputy act's when there was no evidence of widespread abuse to put the sheriff on notice for need for improved training or supervision); Popham v. City of Talladega, 908 F.2d 1561 (11th Cir. 1990) (affirming summary judgment finding no liability for failure to train when no pattern of incidents put the city on notice of a need to train); Brooks v. Scheib, 813 F.2d 1191 (11th Cir. 1987) (no notice of past police misconduct because the plaintiff did not demonstrate that the ten citizen complaints about the police had any merit).[3]

Here, the Complaint fails to allege any prior incidents that would have put Defendant on notice of a need for additional training or supervision. With respect to the failure to train count, the Complaint provides the conclusory allegation that Defendant "failed to give adequate training." (Compl. ¶ 68.) Plaintiff fares no better with the failure to supervise allegations which state that Defendant "failed to give adequate supervision to its police officers" and that Defendant "was aware or should have been aware of the deprivation of constitutional rights of

---

[3] The high standard of proof for section 1983 plaintiffs is intentionally onerous to avoid imposing respondeat superior liability. Gold, 151 F.3d at 1351 n.10.

individuals" "due to prior actions of its police officers and Officers Pare and Bradley." (Compl. ¶ 78.)  Indeed, this allegation is devoid of any facts regarding the "prior actions."  For these reasons, the Court finds that allegations in counts three and four inadequate.

Count five is labeled a "Monell" claim[4] and alleges that Defendant had a policy of inadequately and improperly investigating citizen complaints relating to police misconduct and ignoring or inadequately disciplining officers when misconduct occurred. (Compl. ¶¶ 86-87.) Because the Complaint does not identify any officially promulgated policies by Defendant, Plaintiff must allege an unofficial custom or practice shown through the repeated acts of a final policymaker. Grech v. Clayton County, Ga., 335 F.3d 1326, 1329 (11th Cir. 2003).  Here, Plaintiff has not identified any prior complaints of police misconduct or excessive force not investigated by Defendant.  This claim cannot survive on the police's treatment of decedent alone.  See id. at 1330 n.6 ("A single incident would not be so pervasive as to be a custom or practice.")  The same can be said for the sixth constitutional claim labeled "denial of medical care," which alleges that Officers Pare and Bradley did not timely request or obtain medical attention for decedent.  (Compl. ¶¶ 96-97.)  Indeed, that claim contains no allegations regarding a municipal policy or custom to deny medical care to detainees.

Nonetheless, Plaintiff argues that a single incident is adequate to demonstrate an unconstitutional policy or custom.  In so arguing, Plaintiff relies on Vineyard v. County of Murray, Georgia, 990 F.2d 1207 (11th Cir. 1993).  In that case, the Court observed that "a single constitutional violation may result in municipal liability when there is 'sufficient independent

---

[4]  The Court finds this label puzzling given that the first six counts constitute Monell claims, as they are brought against a municipality for constitutional injuries relating to polices and practices.

proof that the moving force of the violation was a municipal policy or custom.'" Id. at 1212.

There, the Court found there was evidence at trial of inadequate policies of training, supervision and discipline of officers and that the municipality's deliberate indifference was the moving force of the violation of constitutional rights.  Id at 1212-13.  In that case, the municipality did not have a policy and procedures manual and there was no method for logging and retaining citizens' complaints.  Additionally, there was no police report relating to the circumstances of the detainee's arrest and the officers involved in the beating of the detainee were also assigned to obtain statements from witnesses.  Id. at 1212.   The instant Complaint does not contain any factual allegations rising to this level.[5]

The Court finds the recently decided case of  Weiland v. Palm Beach County Sheriff's Office et al., No. 13–14396, 2015 WL 4098270 (11th Cir. July 8, 2015) more helpful. There, the

_____

[5] Plaintiff also relies on the dissenting opinion in an unpublished Fifth Circuit case, Hobart v. Estrada, 582 F. App'x 348 (5th Cir. 2014).  The majority opinion in  Hobart  declined to hold the municipality liable for an officer's shooting of a mentally ill individual when there was no showing of either a training deficiency or a pattern of similar violations or a showing of proclivities of this type of behavior in this officer.   In so holding, the majority opinion stated that even if the plaintiff had not identified an official policy or a widespread practice, liability could potentially be found on a "single incident exception."  To establish deliberate indifference under this policy, the plaintiff must show "that the *highly predictable* consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." Id. at 357 (emphasis in original).  Further, the Fifth Circuit stated that "typically, application of the single incident exception requires evidence of the proclivities of the particular officer involved in the excessive use of force."  Id. at 358. Significantly, the Complaint does not allege anything about these officers' history for using excessive force nor does the Complaint allege that Defendant was aware that a shooting such as this was a "highly predictable" result based on the training provided.  See id. at 359.
　　Plaintiff contends that under the dissent in Hobart, the Court should find that it is obvious that training and supervision are necessary in the context of deadly force and thus Plaintiff has alleged a custom or policy with respect to the counts for unreasonable seizure, failure to train and failure to supervise.  There are, however, no allegations that Defendant's training program was inadequate with respect to the use of deadly force.

mentally ill plaintiff alleged that the sheriff's office maintained unconstitutional policies of not training its deputies in the appropriate use of force when seizing mentally ill citizens.  Id. at * 3.  The Court noted that a local government's decision not to train may rise to the level of a government policy for purposes of section 1983, but, in those cases, a pattern of similar constitutional violations is typically necessary to demonstrate deliberate indifference.  Id.  at * 10.  While the Court  observed that the Weiland complaint alleged that the sheriff's office was "on notice of the need to promulgate, implement and/or oversee policies pertaining to the use of force appropriate for the seizure of mentally ill persons and their transportation to mental health facilities," the Court labeled these allegations conclusory.  Id. (internal citations omitted).  Moreover, the Court found that allegations that the plaintiff had been "Baker Acted" by deputies previously, that the sheriff's office was familiar with the plaintiff's history of mental illness, and there were contacts between deputies and mentally ill citizens inadequate to state a claim.  Id. at * 10 n.21.  Lastly, the Court found that the complaint did not allege that the need for specialized training was "so obvious" that the failure to provide such training amounted to deliberate indifference.  Id. at * 10.   Given that this Complaint provides even less factual underpinning than the one in Weiland, the Court must dismiss it.

Despite the fact that the Complaint falls woefully short of the allegations to state a custom or policy or a constitutional violation, the Court will allow Plaintiff leave to amend to correct these pleading deficiencies, assuming it can be done in compliance with Rule 11 of the Federal Rules of Civil Procedure.  In so amending, Plaintiff shall adhere carefully to the dictates of the Weiland case.

14

D.  State Law Claims

1.  Wrongful Death and Assault and Battery

Defendant contends that these state law claims are barred by Florida Statutes §

776.085 which provides:

> It shall be a defense to any action for damages for personal injury or wrongful death, or for injury to property, that such action arose from injury sustained by a participant during the commission or attempted commission of a forcible felony. The defense authorized by this section shall be established by evidence that the participant has been convicted of such forcible felony or attempted forcible felony, or by proof of the commission of such crime or attempted crime by a preponderance of the evidence.

Florida Statute § 776.085.  According to Defendant, because decedent was engaged in

committing a carjacking when he was shot, these claims should be dismissed.  At this time,

looking solely to the allegations of the complaint, the Court is unable to determine, as a matter of

law, whether the elements of a "forcible felony" were met by decedent's actions.  Thus, the Court

will deny the motion on this basis without prejudice to Defendant re-asserting it once it has

shown, either at summary judgment or trial, that a carjacking or attempted carjacking was

committed.

2.  Negligent hiring, retention and supervision claim

"Negligent hiring occurs when, prior to the time the employee is actually hired, the

employer knew or should have known of the employee's unfitness, and the issue of liability

primarily focuses upon the adequacy of the employer's pre-employment investigation into the

employee's background."  Garcia v. Duffy, 492 So. 2d 435, 438 (Fla. Dist. Ct. App. 1986).

"Negligent retention, on the other hand, occurs when, during the course of employment, the

employer becomes aware or should have become aware of problems with an employee that

15

indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment." Id. at 438-39.   In Florida, a negligent supervision claim is analyzed under the same standard as a negligent retention claims. Mercado v. City of Orlando, 407 F.3d 1152, 1162 (11th Cir. 2005).

With respect to the negligent hiring claim, there are no facts to support this claim. Indeed, there are no allegations regarding whether Defendant conducted or failed to conduct a pre-employment investigation of Officers Pare and Bradley or that any such investigation would have revealed facts leading it to believe that these officers were a risk to the public in the manner manifested in this case.  Turning to the negligent retention and negligent supervision claim, the facts allege that Defendant became aware or should have been aware of these officers' unfitness based upon "multiple complaints, infractions, or reports of misconduct filed against [these officers] in the past" (Compl. ¶¶ 116-17.)  These allegations do not, however, state what type of misconduct occurred and whether the alleged misconduct was related to the type of alleged misconduct alleged here.  The Court will permit Plaintiff leave to amend these counts to remedy the pleading deficiencies.

IV.  Conclusion

Defendant City of Boca Raton's Motion to Dismiss (DE 6) is **GRANTED IN PART AND DENIED IN PART**.  Plaintiff may amend the Complaint, in accordance with this Order

and Rule 11 of the Federal Rules of Civil Procedure, **within 14 days of the date of entry of this**

**Order.**

      **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 22nd day of July, 2015.

                                  _____
                                  KENNETH A. MARRA
                                  United States District Judge